### STATE v. POWERS.

1. GRAND JURORS.—A venire for grand jurors will not be quashed because a new venire for eighteen was issued by order of the Circuit Judge of another Circuit then there presiding, not directed to the commissioners, but providing a copy to be served on them, the writ of venire for previous year having been quashed.

2. IBID.—The provisions of the act of 1897, 22 Stat., 419, providing for drawing six members of each existing grand jury to serve with the grand jury for succeeding year, is only directory and not mandatory.

3. IBID.—PETIT JURORS—IMMATERIAL QUESTION.—Where it appears that all the commissioners were present at the drawing of the juries, and

that all jurors drawn attended Court, the questions whether the venire was properly served on the commissioners, or the jurors properly summoned, become immaterial.

4. JURIES—BOARD OF COUNTY COMMISSIONERS—STATUTES CONSTRUED.—Secs. 1 and 2 of act, 22 Stat., 16, being repealed by act, 23 Stat., 117, cannot be construed to deprive the county board of commissioners of the power to prepare annual jury lists, where sec. 10 of the repealing act specially invests them with the rights and duties devolved upon such board by law.

5. AN INDICTMENT concluding "against the peace and dignity of the same State aforesaid," complies with the provisions of the Constitution requiring it to conclude "against the peace and dignity of the State."

6. REASONABLE DOUBT.—CHARGE that jury must acquit, if there is a reasonable doubt as to the guilt of the accused, sufficiently charges the request "should a reasonable doubt be entertained by one juror, the defendant cannot be found guilty."

7. IBID.—IBID.—Request to define "reasonable doubt" properly refused, because the word "certainty" should have been qualified by some such word as "reasonable" or "moral."

Before WATTS, J., Oconee, March, 1900.     Affirmed.

Indictment against W. K. Powers for murder of J. T. Richey. From sentence, defendant appeals on exceptions hereinafter set out. The order of Judge Gary, in question, after quashing the venire for the grand jury for 1899, is as follows:

"It having been held by the Court at this term, in the case of the State *v.* W. K. Powers, from the facts developed on the motion to quash in that case, that the grand jury drawn in January, A. D. 1899, was not selected and placed in the jury box in accordance with the act of General Assembly in such case provided, and six of the panel thus drawn having been selected by ballot to serve for another year. Now, in consideration of the fact that the names of said six grand jurors were not properly selected and placed in the jury box and are not, therefore, legal grand jurors, it is, therefore, ordered, that the jury commissioners of the county of Oconee, when drawing the grand jurors for the year 1900, do draw the names of eighteen persons to serve as grand jurors

for the year 1900. It is further ordered, that the clerk of this Court do serve a certified copy of this order on the county commissioners of Oconee County."

The following are defendant's grounds of appeal:

"I. Because his Honor erred in refusing defendant's motion to quash the venire for grand jurors, when it appeared that said venire on its face called for the drawing of eighteen grand jurors instead of twelve, as provided by law.

"II. Because his Honor erred in refusing the motion to set aside the panel of grand jurors and to quash the indictment, when it appeared from an inspection of the original writ of venire that there was no return of the sheriff that said writ had been served upon the jury commissioners, and when it appeared that there was no proper evidence that the grand jurors named in the panel of the writ had been duly summoned.

"III. Because his Honor erred in refusing defendant's motion to quash the indictment because the bill of indictment was found by an unlawfully selected and drawn grand jury, and is, therefore, void for the following reasons: 1. Under the law, the present grand jury should be composed of six of the last panel of the grand jurors, selected and drawn as the law directs, and twelve other good and lawful men, selected and drawn as provided by law; whereas, it is composed entirely of eighteen new men, none of whom were grand jurors for the year 1899. 2. At the time of the selection of the names of jurors to be placed in the jury box and the making up of the annual list of jurors in January of this year, at the time of the drawing of the present grand jury, there was no law of force providing or prescribing the manner of selecting and drawing jurors, and any selection and making up by the county board of commissioners of the annual jury list from which the grand jurors were drawn, was without authority of law, and is, therefore, null and void.

"IV. Because his Honor erred in refusing to quash the

indictment because it does not conclude the count for murder without the words, 'Against the peace and dignity of the State,' as required by our Constitution.

"V. Because his Honor erred in refusing to sustain defendant's challenge to the array of petit jurors, which was based upon the following grounds, to wit: That the present array of petit jurors were drawn by the jury commissioners from the annual list of jurors selected and prepared by the county board of commissioners under and by virtue of the provisions of sections 2375 and 2376 of the Revised Statutes of 1893, as amended by an act entitled 'An act to amend sections 2375, 2376 and 2402 of volume I., Revised Statutes of 1893, approved 9th March, 1896,' which sections were specifically repealed by section 9 of an act entitled 'An act to amend an act to provide for the county government of the various counties in this State,' approved 6th March, 1899; and as said sections have been repealed and nothing substituted therefor, there was in January last no law prescribing the method of preparing the annual jury list, the number of names to be placed in the jury box, the qualification of jurors when they are to be drawn, &c.; and that the action of the county board of commissioners in selecting the names to be placed in the jury box and in making up the annual jury list, was without authority of law and is void.

"VI. Because his Honor erred in not holding that the petit jurors had been unlawfully selected and were not legal jurors.

"VII. Because his Honor erred in refusing defendant's request to charge as follows: 'Should a reasonable doubt be entertained by one juror, the defendant cannot be found guilty.'

"VIII. Because his Honor refused the following request to charge: 'A reasonable doubt is an impression after a full comparison and consideration of all the evidence that does not amount to a certainty that the charge against the accused is true.' "

*Messrs. Geo. E. Prince* and *J. R. Earle,* for appellant. The former cites: *Writ of venire is not in conformity to the law:* 22 Stat., 419; Rev. Stat., 2399, 2400; 15 Rich. L., 42, 47. *As to summoning jurors:* 44 S. C., 346. *Preparation of jury lists was illegal:* 22 Stat., 16. *As to the conclusion of the indictment:* Con., art. V., sec. 30; 27 S. C., 620; Con., art. I., sec. 29. *As to reasonable doubt by one juror:* 52 Ia., 284; 34 Kan., 488; 104 Ind., 359; 89 Ind., 235; 75 Ind., 146; 42 Ind., 420; 32 Cal., 433.

*Assistant Attorney General U. X. Gunter,* contra.

January 5, 1901. The opinion of the Court was delivered by

MR. CHIEF JUSTICE McIVER. The defendant was indicted for the murder of one J. T. Richey, alleged to have been committed on the 8th of August, 1899, and the case came on for trial at the March term of the Court of General Sessions for Oconee County for the year 1900. The bill of indictment having been found by a grand jury on the 12th day of March, 1900. This grand jury was composed of eighteen men, none of whom had been members of the grand jury for the preceding year, 1899, but all of whom had been drawn pursuant to the mandate of a writ of venire (a copy of which has been set out in the copy of the "Case"), issued by the clerk of the Court of Sessions for the county of Oconee, in pursuance of an order granted by his Honor, Judge Ernest Gary, on the 9th of November, 1899, during the next preceding term of said Court for said county, while presiding at said term. When the case was called for trial, and before the prisoner had been arraigned or pleaded to the indictment, his counsel moved to quash said writ of venire upon grounds which will hereinafter be stated and considered, which motion was refused by his Honor, Judge Watts, to which the defendant duly excepted. Counsel for defendant then interposed a challenge to the array of petit jurors upon grounds which will hereinafter be stated and

considered. This challenge was not sustained and the defendant again excepted. The trial then proceeded and resulted in a verdict of "Guilty, with recommendation to mercy," and the prisoner was sentenced "to be confined at hard labor in the State penitentiary for the term of his natural life."

From this judgment defendant appeals upon the several grounds set out in the record, which should be incorporated by the reporter in his report of the case.

The question made by the first ground of appeal is whether the fact that the writ of venire for grand jurors requiring the drawing of eighteen instead of twelve men to serve as grand jurors for the year 1900, rendered such venire void. Sec. 38 of the Crim. Stat., 2 Rev. Stat., 274, provided that the clerk of the Court should, at least fifteen days before the commencement of the first term of the Court in each year, issue a writ of venire for eighteen grand jurors during that year and until another grand jury is empanelled in their stead; but as that section has been amended by the act of 1897—22 Stat., 419— striking out that section and inserting in lieu thereof a provision that at the last term of the Court of General Sessions for each county in the year 1897, six of the grand jurors then in service shall be drawn in the manner prescribed, who shall serve as grand jurors during the next succeeding year; and also making it the duty of the clerk of the Court of General Sessions in each county in the year 1898, and each succeeding year thereafter, not less than fifteen days before the commencement of the first term of the Court in said year, to issue a writ of venire for twelve grand jurors to be returned to that Court, who, together with the six grand jurors for whose selection provision has been made, shall be held to serve at each term throughout said year, and until another grand jury is selected and empanelled. The contention on the part of the appellant is that this amendatory provision renders the writ of venire issued by the clerk in this case, under the order of Judge Gary for eighteen

jurors, void, as issued without authority of law; and hence that there was error in refusing the motion to quash the writ of venire for grand jurors. It appears from the "Case" that at the November term, 1899 (the last term of that year), Judge Gary presiding at that term under an assignment made according to law, had granted a motion in this same case to quash the writ of venire for grand jurors, issued in January, 1899; and there was no lawful grand jury then in existence for the county of Oconee from which the six grand jurors provided for by the act of *1897, supra,* could be drawn; for it will be observed that the language of that act is: "six of the grand jurors *then in service;*" and if, as we have seen, there was no lawful jury for the county of Oconee then in existence, there was no body from which the six jurors *"then, in service"* could have been drawn. And as the provisions of the act of 1897 from its express terms only applies where there is a grand jury *"then in service"* from which the six grand jurors can be drawn, and as the act of 1897 only repeals such acts and parts of acts as are *"inconsistent"* with the provisions of the act of 1897, there is no impropriety in applying the provisions of the previous law to a case to which the provisions of the act of 1897 cannot be applied, by reason of the fact that there was no grand jury in existence at the time when the grand jury here in question was drawn. Especially is this so when the provision of the present Constitution, sec. 22, of art. V., which are mandatory, expressly declares that: "The grand jury of each county shall consist of eighteen members." So that when Judge Gary granted his order of the 9th of November, 1899, requiring the jury commissioners of the county of Oconee to draw eighteen persons to serve as grand jurors for the year 1900, he was right in providing for the condition of things with which he was confronted, after granting his previous order quashing the writ of venire under which grand jurors for the county of Oconee had been drawn in January, 1899. It is contended, however, that Judge Gary's order of the 9th of November, 1899, was without authority

of law and is void for two reasons : first, because he had over-
looked the provisions of sec. 2399 of the Rev. Stat. of 1893,
making it the duty of the board of jury commissioners,
whenever it shall be held by the Court of competent juris-
diction "that the jury list of any county has been unlawfully
prepared or is irregular or illegal, so as to render void the
drawing of jurors therefrom * * * to prepare a special jury
list for the said county forthwith, in the manner now pre-
scribed by law, from which special list grand and petit jurors
shall be drawn for the Courts of General Sessions and Com-
mon Pleas for such county until the annual jury list shall
have been prepared for each county at the time provided in
section 2376," to wit : during the month of January in each
year, except in certain counties, of which the county of
Oconee is not one.    It will be observed that the provisions
of this section (2399) are taken from the act of 1877, 16
Stat., 329; but by the act passed at the extra session of
1880—17 Stat., 307-8—another provision was made to
remedy any irregularity or invalidity in any jury, and by the
last section of this act (1880), all acts and parts of acts in-
consistent therewith are repealed.    If, therefore, there is
any inconsistency between the acts of 1877 and *1880, supra,*
then the former is repealed by the latter.    But if there is no
inconsistency between these two acts, then we have two
modes of proceeding by which an irregularity or invalidity
in a jury may be remedied, and surely there would be no
error in adopting the mode last prescribed.    The provisions
of this act of 1880, are incorporated in sec. 2400 of the Rev.
Stat. of 1893, which reads as follows : "In case at any time
it shall be brought to the attention of the resident Circuit
Judge of any Circuit that an irregularity has occurred in the
drawing of jurors for any Circuit Court within his Circuit,
or that any act has been done whereby the validity of any
juries drawn or to be drawn may be questioned, it shall be
lawful for such Circuit Judge to issue his order to the board
of jury commissioners of the county for which said Circuit
Court shall be held, at least fifteen days before the sitting

thereof, to proceed to draw jurors for such term, or to take such measures as may be necessary to correct such error." It is contended, however, that this power is conferred only upon the *resident* Circuit Judge of the Eighth Circuit, in which is embraced the county of Oconee; and that as Judge Gary was not the resident Judge of that Circuit, he had no jurisdiction to make the order under consideration. But in this contention the provisions of sec. 2248 of the Rev. Stat. of 1893 are overlooked. That section reads as follows: "Every Judge, while holding the Circuit Court for any Circuit, pursuant to the provisions of the law of this State, shall be invested with powers equal to those of the Judge of such Circuit, and may hear and determine all causes and motions, and grant all orders in open Court or at chambers, which it is competent for the Judge residing in such Circuit to hear, determine or grant, any law, usage or custom to the contrary notwithstanding." Now, as the Court will take judicial notice of the fact that Judge Gary, at the time he granted the order under consideration, was holding the Circuit Court for the county of Oconee, "pursuant to the provisions of the law of this State," there can be no doubt that he had full power to grant the order in question, under the express provision of the section above quoted.

It is further objected, that the order "was directed to the board of jury commissioners, not to the clerk or the county board of jury commissioners." There are several answers to this position. In the first place, the act (sec. 2400, *supra,*) expressly requires the Circuit Judge "to issue his order to the board of jury commissioners," and the order expressly requires the clerk to serve a certified copy of the order "on the county commissioners of Oconee County." In the next place, it is manifest that these irregularities, if, indeed, they did exist, cannot affect the legality of the jury, under the cases of *State* v. *Toland,* 36 S. C., 515, and *State* v. *Derrick,* 44 S. C., 344. See, also, *State* v. *Smith,* 38 S. C., 270.

Again, the provisions of the act of 1897, requiring that

six of the members of the former grand jury shall be drawn, which, with the twelve to be drawn at least fifteen days before the first term of the Court in each year, shall constitute the grand jury for such year, may be well regarded as directory merely, under the authorities cited by the assistant attorney general from Proffat on Jury Trials, sec. 46, and Thompson and Merriman on Juries, sec. 556; especially, when we find the same principle established by our own Court, in *State* v. *Massey,* 2 Hill, 379 (cited with approval in *State* v. *Clayton,* 11 Rich., at page 590), where it was held that the provision of the act of 1799 requiring that every three years a new jury list from which juries shall be drawn during the three succeeding years, "is purely directory to public officers in the discharge of their duty, if they fail to discharge it, and the jury is drawn from the old list, it does not vitiate the array, nor is it any objection to the polls. The jurors are still *boni et legales homines*—2 Hawk P. C., book 2, ch. 43, sec. 14. The party is not prejudiced if the jury for his trial are from the vicinage, the district (county) where the offense is committed, and have all the other legal qualifications. It will be observed that the act does not declare a venire issued for jurors drawn from the old list to be void, nor does it direct the array to be quashed. It was not intended to secure any right, benefit or privilege to the defendant; it was merely to regulate the drawing in such a way as to divide the duty of serving upon the jury among the inhabitants of a district." These remarks of that great Judge, O'Neal, in delivering the opinion of the Court in that case, may well be applied to the present case. It seems to us that, in any view which may be taken, the first ground of appeal cannot be sustained, and must, therefore, be overruled.

The second ground of appeal will next be considered. In view of the fact that it appears in the "Case" that all of the jury commissioners appeared at the time and place appointed for the purpose and participated in drawing the grand jurors, it becomes immaterial to inquire

14—59

whether the writ of venire had been served on the jury commissioners; and as it does not appear that any one of the persons drawn to serve as grand jurors failed to attend, it becomes immaterial to inquire whether the return of the sheriff shows that these persons had been duly summoned; but we may add that it does appear from the return of the sheriff that they had all been served in the manner indicated in the schedule contained in the writ. This ground must be overruled. See *State* v. *Toland* and *State* v. *Derrick, supra.*

The third ground of appeal is based upon two subdivisions, the first of which is disposed of by what has already been said in considering the first ground of appeal. The second subdivision of the third ground of appeal makes the point, that by reason of the repeal of sections 1 and 2 of the act of 1896, 22 Stat., 16, amending sections 2375 and 2376 of the Rev. Stat. by the 9th section of the act of 6th March, 1899, 23 Stat., 117, there was no law of force, when the jury list was prepared in January, 1900, "providing or prescribing the manner of selecting and drawing jurors, and any selection and making up by the county board of commissioners of the annual jury list from which the grand jurors were drawn, was without authority of law, and is, therefore, null and void." In the first place, this position cannot be sustained without wholly ignoring section 10 of the same act of 1899, which reads as follows: "The county board of commissioners shall have the same rights and duties with reference to the preparation of jury lists as are now devolved by law upon the present county boards of commissioners." This is not permissible under the well settled rule of statutory construction, which requires that each and every portion of a statute must, if possible, be given its full force and effect; and that it is possible to do so in this instance, we shall presently show. In the second place, the construction contended for would leave the State without any law providing for the selection of an annual jury list, from which jurors for the year 1900 could lawfully

be drawn; and such an intention, or such omission, cannot lightly be attributed to the General Assembly. One, at least, of the objects of the act of 1899, above referred to, was to amend a previous act, entitled "An Act to provide for the county government of the various counties of this State," which became a law without the approval of the governor on the 12th of January, 1899, 23 Stat.; I, by reason of a provision in the Constitution (sec. 23, art. III.), whereby the constitution of the board of county commissioners as previously composed was changed and a new board of county commissioners, consisting of the supervisor and two persons to be appointed by the governor (except in certain counties therein named); and in sections 5 and 6 the same provisions are found as in sections 9 and 10 of the act of 1899, above referred to, which was approved 6th March, 1899. Now, as the act of 1896, 22 Stat., 16, amending sections 2375 and 2376 of Rev. Stat., had imposed upon the old board of county commissioners *as then constituted* the duty of preparing an annual list of jurors in the manner therein prescribed, from which jurors both grand and petit should be drawn, and as it might be doubtful whether the new board of county commissioners, as constituted and provided for in the act of 1899, could lawfully perform the duties previously imposed upon the former board of county commissioners, the General Assembly no doubt intended to dispel such doubt by repealing sections I and 2 of the act of 1896, whereby the duty of preparing an annual jury list had been imposed upon the former board of county commissioners *as then constituted,* and devolving upon the new county board of commissioners *as now constituted* the same rights and duties with reference to the preparation of the jury lists as had been previously devolved upon the former county board of commissioners. This, we think, is the proper construction of sections 9 and 10 of the act of 1899, as it carries out what, no doubt, was the true intent of the legislature. Hence it follows that the position taken in the second subdi-

vision of the third ground of appeal cannot be sustained, and that ground must be overruled.

Passing by, for the present, the fourth ground of appeal, we will proceed to consider the fifth and sixth grounds, as they raise a question akin to that just considered. The challenge to the army of petit jurors was based upon the same ground as the position taken in the second subdivision of the third ground of appeal, which, as we have seen, cannot be sustained; and for the same reasons the fifth and sixth grounds of appeal must be overruled.

Recurring, now, to the fourth ground of appeal, which imputes error to the Circuit Judge in refusing the motion to quash the indictment because the count for murder does not conclude with the words, "against the peace and dignity of the State," as required by the Constitution. The count for murder in the indictment in this case concludes in these words, "against the peace and dignity of the same State aforesaid." So that all the words required by the Constitution are found in this indictment, and the only question is whether the additional words "same" and the word "aforesaid," which cannot possibly alter the meaning of the concluding words of the indictment from that expressed by the words required by the Constitution, vitiate the indictment. This question has been several times decided in this State adversely to the view taken by the appellant. First, under the Constitution of 1790, in the case of the *State* v. *Washington,* 1 Bay, 120, and again in the *State* v. *Anthony,* 1 McC., 285. Next, under the Constitution of 1868, in the case of the *State* v. *Robinson,* 27 S. C., 618, and finally under the present Constitution, in the case of the *State* v. *Mason,* 54 S. C., 240. So that the question must now be regarded as settled. The point made by counsel for appellant in his argument, that the rule should now be different, since the provision in the present Constitution contained in sec. 29, of art. I., declaring that all the provisions of the present Constitution must be construed to be mandatory and prohibitory, and not merely directory, except

where they are expressly made directory, is not well taken.
None of the cases above cited are rested upon the ground
that the provision of the Constitution requiring indictments
to conclude, "against the peace and dignity of the State," are
to be regarded as directory merely; but they rest upon the
ground that where an indictment, in its conclusion, contains
all the words required by the Constitution, and also contains
additional words, which do not change or obscure the mean-
ing of the required words, such additional words should be
regarded as surplusage.   Besides, the case last cited, *State
v. Mason,* was decided more than three years after the pres-
ent Constitution went into effect, and is, therefore, direct
authority upon the point.   The fourth ground of appeal
must, therefore, be overruled.

The seventh ground of appeal imputes error to the Circuit
Judge in refusing to charge as follows: "Should a reasonable
doubt be entertained by one juror, the defendant cannot be
found guilty."   The "Case" shows that in response
to the request to charge in those words, the Circuit
Judge said: "I won't charge that in those words, but
I charge you that, as I have already charged you in my own
language."   Now, the rule is well settled that there is no
error in refusing to charge any proposition in the words of
the request, provided the same proposition embodied in the
request has already been charged in the Judge's own lan-
guage.   The "Case" shows that the Circuit Judge had
already fully charged the jury that they must give the ac-
cused the benefit of *every* reasonable doubt; and as the jury
could not find a verdict of guilty unless each and every mem-
ber of the jury agreed to it, the jury could not fail to under-
stand that if there was a single member of the jury who
entertained a reasonable doubt as to the guilt of the prisoner,
they could not render a verdict of guilty.   But when the
Circuit Judge, in response to the request, said, "I won't
charge you that in those words, but I charge you *that,* as I
have already charged you in my own language," he trans-
lated his own language to mean the same thing as the words

contained in the request, and thus removed any possibility of doubt upon the subject. The seventh exception is, therefore, overruled.

The eighth ground of appeal imputes error to the Circuit Judge in declining the request to define a reasonable doubt as follows: "A reasonable doubt is an impression after a full comparison and consideration of all the evidence that does not amount to a certainty that the charge against the accused is true." The fundamental vice in this request is that it imports that the jury cannot convict unless they reach a conclusion, amounting to certainty, without any qualification whatsoever—an *absolute* certainty—that the charge against the accused is true; thus requiring an impossibility—for in all questions depending upon human testimony, owing to the imperfection of human nature, there can be no such thing as *absolute* certainty in such cases. A conclusion in such cases may be reached, that the charge is true to a *moral certainty,* and hence those who have undertaken to define a reasonable doubt usually qualify the word "certainty" by employing the word "moral," or some equivalent word or phrase. Thus we find that in the familiar cases of Dr. Webster, cited by counsel for appellant in his argument, the following language is used by that great jurist, Chief Justice Shaw, in defining the expression, "reasonable doubt:" "It is that state of the case which, after the entire comparison and consideration of all the evidence, leaves the minds of jurors in that condition that they cannot say they feel an abiding conviction to a *moral* certainty of the truth of the charge. The evidence must establish the truth of the fact to *a reasonable and moral* certainty, a certainty that convinces and directs the understanding and satisfies the reason and judgment" (italics ours). In the present case, however, the request to charge contained no such qualifying terms, and for that reason alone might well have been refused. It seems to us, however, that any attempt to define what is meant by the expression, "a reasonable doubt," tends to confuse rather than enlighten the minds

of the jurors. The words have a plain and obvious mean-
ing, well understood by a person of ordinary intelligence,
and need no interpretation. As is said in that very valuable
work, 19 Am. & Eng. Enc. of Law, 1081: "There have
been many attempts to define and interpret the term 'reason-
able doubt' * * * but it is apprehended that such attempts
are futile; that the words are of plain and unmistakable
meaning, and that any affirmative definition on the part of
the Court tends only to confuse the jury and to render un-
certain an expression which, standing alone, is certain and
intelligible." See, also, the quotation on the next page of
that work from Thomp. on Trials, sec. 2463, where, amongst
other things, it is said: "All the definitions are little more
than metaphysical paraphrases of an expression invented
by the common law Judges, for the very reason that it was
capable of being understood and applied by plain men in the
jury box." Besides, we think that the charge of the Circuit
Judge in reference to the expression, "reasonable doubt," is
fully sustained by the case of the *State* v. *Coleman,* 20 S. C.,
at page 455, which is cited with approval in *State* v. *Senn,*
32 S. C., at page 404. The eighth ground of appeal must
be likewise overruled.

The judgment of this Court is, that the judgment of the
Circuit Court be affirmed.